UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMIKA GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-485 |
| v. | ) | |
| | ) | |
| TRUEACCORD CORP., | ) | Judge Jorge L. Alonso |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After she received dunning emails, plaintiff Tamika Gilbert ("Gilbert") filed against defendant TrueAccord Corp. ("TrueAccord") a complaint alleging that the dunning emails violated the Fair Debt Collection Practices Act ("FDCPA"). The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

**I.   BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact undisputed. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). In this case, plaintiff did not respond to defendant's statement of facts. Accordingly, the Court has deemed admitted each of defendant's facts to the extent that such fact was supported by citation to record evidence.

At some point, plaintiff incurred a debt (to Capital One Bank (USA) N.A.) that was, at another point, purchased by Pinnacle Credit Services, LLC. Plaintiff had used her Capital One credit account to purchase food and clothes. In January 2021, defendant, who regularly attempts to collect (directly or indirectly) debts asserted to be owed another, began attempting to collect on the debt.

On January 10, 2021, defendant emailed plaintiff. The email stated, among other things, that it was "an attempt to collect a debt and any information obtained will be used for that purpose." The email listed the creditor as Pinnacle Credit Services, LLC, stated that the amount owed was $2,528.70 and stated that the debt had originally been owed to Capital One. The email also stated:

> The law limits how long you can be sued on a debt. Because of the age of your debt, Pinnacle Credit Services, LLC cannot sue you for it. Please note that making a payment on a time-barred debt has the potential to restart the statute of limitations for suit on the debt. However, it is the policy of Pinnacle Credit Services, LLC (a) never to file suit on a debt after the original statute of limitations has expired and (b) never to sell such a debt. The foregoing is a statement of our current practices. Should we ever change our practice not to sell time-barred debts we will require any purchaser to agree to follow our practice of not filing suit on such debts. Because of the age of your debt, Pinnacle Credit Services, LLC cannot report it to any credit reporting agency.

(January 10, 2021 email/Docket 28 at 13).

On January 19, 2021, defendant sent to plaintiff an email about a different debt, which was apparently owned by Orion Portfolio Services II, LLC. On January 21, 2021, plaintiff's attorney forwarded the January 19 email back to defendant, stating, "I am representing this consumer. Do not contact her again." (January 21, 2021 email/Docket 28 at 15).

Three days later, on January 24, 2021, defendant sent another email to plaintiff. This one stated, in relevant part:

> Your outstanding balance with Pinnacle Credit Services, LLC.

> We sent you some emails regarding your balance of $2,528.70 and wanted to check in with you to see how we can help. If you need help setting up a payment plan click on the link below to get started.
>
> ***
>
> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.
> Please read below for important disclosures.
>
> ***
>
> The law limits how long you can be sued on a debt. Because of the age of your debt, Pinnacle Credit Services, LLC cannot sue you for it. Please note that making a payment on a time-barred debt has the potential to restart the statute of limitations on the debt. However, it is the policy of Pinnacle Credit Services, LLC (a) never to file suit on a debt after the original statute of limitations has expired and (b) never to sell such a debt. The foregoing is a statement of our current practices. Should we ever change our practice not to sell time-barred debts we will require any purchaser to agree to follow our practice of not filing suit on such debts. Because of the age of your debt, Pinnacle Credit Services, LLC cannot report it to any credit reporting agency.
>
> This was originally an account with Capital One Bank (USA) N.A., account number ending in 7427.

(January 24, 2021 email/Docket 28 at 14). Later that evening, plaintiff's attorney forwarded the January 24, 2021 email back to defendant, stating:

> This is the second time that I am advising True Accord (see request (903350))
>
> I am representing this consumer.
> Do not contact her again.

(Second Atty. Email/Docket 26-2 at 8).

In plaintiff's complaint, she alleged she had been injured in two respects: (1) she had refrained from making purchases; and (2) the communications from defendant had wasted her time. Plaintiff testified at her deposition about her alleged injuries. She was asked the following questions and gave the following answers:

> Q: So you forwarded this e-mail or one like it to your lawyer. And what happened after that?
>
> A: Well, we had a discussion on what steps he was going to take next and we took it from there.

3

> Q: And after receiving these e-mails regarding the Capital One account did you ever attempt to make a payment on this debt?
>
> A: No.
>
> Q: Did you ever consider making a payment on this debt?
>
> A: Well, to TrueAccord or Pinnacle, no, because I didn't know who these people were. You said Capital One sold them my account which I didn't know that you could do that, but, okay, I know because I don't know who these—I mean, it's so much stuff going on. Who is TrueAccord and who is Pinnacle? I don't know these people asking me for $2,000.00. So, no, I wasn't gonna try to pay them. I don't even have $2,000.00 to pay them.
>
> Q: Just so that I'm clear, there was never a moment where you thought that you would pay this debt after receiving—
>
> A. No, I don't work. I can't pay. I don't have $2,600.00 to begin with.

(Plf. Dep. at 30-31/Docket 37-3 at 2). Plaintiff also testified:

> Q: You also state in your complaint that you incurred actual damages because you refrained from making some purchases.
>
> A. I mean, yes. Like I was just telling you, like, it's hard. You know what I'm saying? I don't work. So it's like you telling me I owe $2,600.00, but I don't have any food in my refrigerator or I'm behind on rent like. Now it's like it's down to I'm choosing this or that. Should I pay this, should I pay that, do I pay the light? You know what I'm saying?

(Plf. Dep. at 38/Docket 33 at 11).

> Q: Can you give me an example of one thing that you didn't buy or you refrained from purchase [sic] in order to—because you thought you owe this money?
>
> A: I'm going to say my usual things. Food, toiletries. Like, you know, I didn't know what was gonna happen and I don't work, so it's like, okay, should I buy food or should I save this money.

(Plf. Dep. 48-49/Docket 33 at 12-13).

Plaintiff also testified at her deposition that she thought TrueAccord might sue her. Specifically, plaintiff was asked the following question and gave the following answer:

> Q: Why did you believe that TrueAccord would sue you for the debt?
>
> A: I mean, because it's a debt and usually that's what—I mean, how else were they gonna get the money if I couldn't pay it? Like I assumed they would sue me because—I mean that's what people do.

(Plf. Dep. at 54/Docket 33 at 10).

In connection with the motions for summary judgment, plaintiff submitted an affidavit stating, among other things:

> 4) After I received TrueAccord's emails, I came to fear that TrueAccord would report my debt to Capital One on my credit report and that TrueAccord would sue me, obtain a judgment against me, and then execute on that judgment.
>
> 5) Thus, I refrained from making purchases of, among other things, drinks in anticipation of TrueAccord's execution of a judgment against me.
>
> 6) After my lawyer advised me that he instructed TrueAccord to cease contacting me and TrueAccord contacted me anyway, I became so angry that, among other things, I began to shake.

(Docket 33 at 14).[2]

---

[2] Defendant argues that the affidavit should be rejected as self-serving and contrary to plaintiff's deposition testimony. The Court disagrees. An affidavit's self-serving nature is not a mark against it. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("It is not the self-serving nature of the affidavits, however, that sealed their fate in these cases. After all, most affidavits submitted for these purposes are self-serving."); *see also Sawyer v. United States*, 874 F.3d 276, 279 (7th Cir. 2017) ("district courts may not discount a petitioner's declarations simply because they may be self-serving"). On the other hand, a party cannot use an affidavit (or declaration) to contradict deposition testimony. *Donaldson v. Johnson & Johnson*, __ F.4th __, __, 2022 WL 2145276 at *3 (7th Cir. June 15, 2022) ("A court is well within its discretion to strike an affidavit that contradicts deposition testimony unless the affiant has offered a plausible explanation for the discrepancy."). Here, the Court does not see anything in plaintiff's affidavit that conflicts with plaintiff's deposition testimony, so that is no reason to reject the affidavit. Defendant does not object to the form of the affidavit. Defendant neither objects that the affidavit is unnotarized nor objects that the document fails to qualify as a declaration under 28 U.S.C. § 1746. *See Sheikh v. Grant Regional Health Ctr.*, 769 F.3d 549, 551 (7th Cir. 2014) ("[I]t isn't actually an affidavit—it isn't notarized or otherwise witnessed—though it might pass muster as a declaration, which can be substituted for an affidavit and thus constitute part of the evidentiary record, provided it complies with the formalities required by 28 U.S.C. § 1746."). Thus, those objections are waived.

Plaintiff filed suit, asserting two claims. In Count I, plaintiff asserted a violation of 15 U.S.C. § 1692e, which prohibits false, deceptive or misleading claims. Plaintiff alleged defendant "violated Section 1692e by urging Ms. Gilbert to pay Defendant True Accord for a debt without disclosing that Defendant TrueAccord could not sue or report that debt." (Complt. ¶ 13). In Count II, plaintiff asserted a claim for violation of 15 U.S.C. § 1692b(6), alleging defendant continued "to communicate with Ms. Gilbert even after the Defendant knew she was represented by counsel." (Complt. ¶ 16). The parties have filed cross motions for summary judgment.

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. DISCUSSION

#### A. Standing

Defendant argues that plaintiff lacks standing to pursue her claims. Issues of standing are jurisdictional and cannot be waived. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021).

The Constitution limits this Court's jurisdiction to "[c]ases" and "[c]ontroversies." U.S. Const. Art. III, § 2. "Standing is the first question because, unless the case presents a justiciable controversy, the judiciary must not address the merits." *Freedom From Religion Foundation, Inc. v. Obama*, 641 F.3d 803, 805 (7th Cir. 2011). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]"). *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021). A plaintiff must establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, at the summary-judgment stage, mere allegations will not suffice.

The "irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To show injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). The "most obvious" concrete injuries are "traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 141 S.Ct. at 2204. Intangible harms can be concrete, too, as the Supreme Court has explained:

7

> Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion.

*TransUnion*, 141 S.Ct. at 2204 (citations omitted). A mere statutory violation will not do, unless it is accompanied by harm. For example, the Supreme Court noted that it "is difficult to imagine how dissemination of an incorrect zip code, without more, could work any concrete harm," even if such dissemination constituted a violation of a statute. *Spokeo*, 578 U.S. at 342.

### 1. Lost time

Defendant first argues that plaintiff has not shown injury in fact, because use of one's time is not an injury in fact. While it might be difficult to measure the value of plaintiff's time (she testified she does not work), as opposed to the time of a highly-compensated CEO, an injury need not be "large;" a mere "trifle" will do. *Sierra Club v. Franklin Cty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008). Furthermore, defendant is wrong to suggest that the loss of time can never be an injury in fact. As the Seventh Circuit has explained, "time and money spent resolving fraudulent charges are cognizable injuries for Article III standing." *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016); *see also Freedom From Religion*, 641 F.3d at 807 ("What did provide standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display.") What will not confer standing, however, is time spent consulting or hiring an attorney. *Pierre v. Midland Credit Mgt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) ("Indeed, the concreteness requirement would be an empty one if all it took was contacting a lawyer and filing suit."); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020) ("A desire to obtain legal advice is not a reason for universal standing. . . . Many people think that an

advisory opinion will set their minds at ease, but hiring a lawyer in quest of a judicial answer does not permit a federal court, operating under Article III, to give that answer.").

Here, plaintiff has put forth no evidence that she lost time in any manner other than in discussions with her attorney, so she has not established standing based on a loss of time.

### 2. Other injuries

Plaintiff has, however, put forth sufficient evidence of a different concrete injury. With respect to Count II (plaintiff's claim that defendant continued to contact her after her lawyer told defendant not to), plaintiff put forth evidence that she was so angered by defendant's subsequent email to her that she began to shake. It is correct, as defendant points out, that feelings such as annoyance, indignation, stress, intimidation or confusion are not concrete injuries. *Wadsworth*, 12 F.4th at 668; *Brunett*, 982 F.3d at 1069. Physical manifestations of emotions, however, can be concrete injuries. *See Pennell v. Global Trust Mgt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). Here, plaintiff has put forth evidence that she was so angry she began shaking. That suffices as a concrete injury, given binding precedent that physical harms are concrete, *TransUnion*, 141 S.Ct. at 2204, and that the magnitude of the injury does not matter (a trifle will do), *Sierra Club*, 546 F.3d at 925. Accordingly, plaintiff has put forth sufficient evidence of a concrete injury with respect to Count II.

With respect to Count I (plaintiff's claim that the emails were misleading), the parties disagree as to whether plaintiff has put forth sufficient evidence of an injury. Plaintiff's injury theory with respect to Count I seems to be that, after plaintiff received the emails, she acted to her detriment by refraining from making a few purchases. Specifically, plaintiff put forth evidence that she refrained from purchasing some food, toiletries and drinks.

9

The Court cannot agree that a failure to make a purchase is the sort of detriment that confers standing, because the Court does not see how a failure to purchase something constitutes a concrete injury. Detriment is just another word for harm or injury, and the types of detriments that confer standing are concrete detriments, usually monetary or physical harms (though an intangible harm would do). As the Seventh Circuit has explained:

> A debtor confused by a dunning letter may be injured if she acts, *to her detriment*, on that confusion—if, for example, the confusion leads her *to pay something she does not owe*, or *to pay a debt with interest running at a higher rate*. But the state of confusion is not itself an injury.

*Brunett*, 982 F.3d at 1068 (7th Cir. 2020) (emphasis added); *see also Pierre*, 29 F.4th at 939 ("Statutory violation or not, there was no concrete harm. Neither plaintiff paid a debt she did not owe or otherwise acted to her detriment in response to the letter."); *Bazile v. Finance Sys. of Green Bay, Inc.*, 983 F.3d 274, 280 (7th Cir. 2020) ("[Plaintiff], not knowing that the debt mentioned in the letter was accruing interest, chose to pay another debt with a lower interest rate, causing her to lose the difference between the interest that accrued under the two rates.").

Here, plaintiff has put forth no evidence of such a monetary detriment. Plaintiff has not, for example, put forth evidence that she refrained from paying a different debt, thereby incurring a financial harm in the form of interest on that other debt. Rather, plaintiff has put forth evidence that she refrained from purchasing food, toiletries and drinks. One does not suffer a monetary injury by refraining from making a purchase; one still has her money if she refrains from making a purchase. Paying too much for an item constitutes an economic injury, but refraining from paying for an item does not. At best, plaintiff's action might have left her with a feeling of want or desire, but such feelings are not concrete injuries.

Even if plaintiff could be thought to have suffered an injury, her decision to refrain from any particular purchase is not fairly traceable to defendant. *Cf. Sanner v. Board of Trade of the*

*City of Chi.*, 62 F.3d 918, 923-24 (7th Cir. 1995) ("We have little difficulty concluding that the soybean farmers who refrained from selling soybeans due to the depressed price of the cash market lack standing under Article III. . . . [T]he district court determined that the farmers refraining from selling soybeans lacked standing to sue for their injury no matter what facts they might later be able to adduce. Each individual farmer's decision to refrain from selling could not, as a matter of law, be traced to the price decline allegedly caused by the CBOT's resolution."). In *Sanner*, the Seventh Circuit relied on *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 746 (1975), where the Supreme Court "h[e]ld[] that individuals who neither purchased nor sold stock lacked standing under the securities laws to claim misleading stock prospectuses led them to refrain from purchasing." *Sanner*, 62 F.3d at 924.

Plaintiff lacks standing with respect to Count I, so that claim is dismissed for want of jurisdiction. Dismissals for lack of jurisdiction are dismissals without prejudice. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1013 (7th Cir. 2021). Count I is dismissed without prejudice.

### B. Merits of Count II

Defendant argues that it is entitled to summary judgment on Count II, because, in plaintiff's complaint, she cited the wrong statute. Specifically, in her complaint, plaintiff alleged defendant "violated Subsection 1692b(6) by continuing to communicate with Ms. Gilbert even after the Defendant knew she was represented by counsel." (Complt. ¶ 16). That section states, in relevant part:

> Any debt collector communicating with any person other than the consumer for *the purpose of acquiring location information* about the consumer shall—
> \* \* \*
> (6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that

> attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b(6) (emphasis added). As defendant points out, plaintiff has put forth no evidence that defendant was seeking location information, so plaintiff cannot survive summary judgment on a claim for violation of § 1692b(6).

Plaintiff argues, however, that she made a scrivener's error when she cited § 1692b(6) in her complaint. Plaintiff explains that she meant to cite § 1692c(a), which states, in relevant part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, *a debt collector may not communicate with a consumer in connection with the collection of any debt—*
> \* \* \*
> (2) *if the debt collector knows the consumer is represented by an attorney with respect to such debt* and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer . . .

15 U.S.C. § 1692c(a) (emphasis added). Plaintiff seeks leave to amend her complaint to add a claim for violation of § 1692c(a).

Leave to amend is not necessary. First, a scrivener's error is one "resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record," *United States v. Gibson*, 356 F.3d 761, 766 n. 3 (7th Cir. 2004) (quoting *Black's Law Dictionary* 563 (7th ed. 1999)), and it can be corrected by the Court, *Sinha v. Bradley Univ.*, 995 F.3d 568, 575-76 (7th Cir. 2021).

Second, and more importantly, plaintiff, in her complaint, alleged sufficient facts to state a claim under § 1692c(a), whether she cited the section or not. Plaintiff specifically alleged that defendant had continued to communicate with her after it learned she was represented by counsel. Thus, the Court may consider that claim even though plaintiff did not list the specific section in her complaint. *See Johnson v. Shelby*, 574 U.S. 10, 11 (2014) ("Federal pleading rules

12

. . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). As the Seventh Circuit has explained:

> The judge recognized that *Johnson v. Shelby*, 574 U.S. 10, 135 S.Ct. 346, 190 L.Ed. 309 (2014), held that complaints need not set out legal theories, but she dismissed *Johnson* as irrelevant because defendants moved for summary judgment rather than to dismiss the complaint. This distinction eludes us. If as *Johnson* holds complaints need not plead law, then it does not matter whether the defendant moves to dismiss the complaint or for summary judgment; in either event, the fact that the complaint omits a legal theory cannot block a plaintiff from invoking that theory.
>
> Complaints plead *grievances*, not legal theories, and [plaintiff's] complaint spelled out his grievance: the Jail confiscated his books and did not return them when he was released. What rule of law, if any, those acts violated, was a subject to be explored in other papers, such as motions, memoranda, and briefs. [Plaintiff] initially relied only on the First Amendment but at later stages of the suit invoked the Due Process Clause too; he did not need to amend the complaint to do so.

*Koger v. Dart*, 950 F.3d 971, 975-76 (7th Cir. 2020).

Just so here. Amendment is not necessary.[3] Because plaintiff does not need leave to amend, her motion for leave to amend is denied as moot. The Court will consider the merits of Count II under § 1692c(a).

Section 1692c(a) states that "a debt collector *may not communicate with a consumer in connection with the collection of any debt—* . . . (2) if the debt collector *knows* the consumer is represented by an attorney *with respect to such debt*[.]" 15 U.S.C. § 1692c(a)(2) (emphasis

---

[3] Even if plaintiff were required to amend, the Court would grant leave. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, the "court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Leave may be denied where it would be futile, cause undue delay or result in prejudice. *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022). Often, this Court disallows amendment after the close of discovery, because that tends to prejudice the defendant and cause undue delay. Here, there would be no undue delay, because the parties do not need any more discovery. Nor is defendant prejudiced. It has been on notice from the day plaintiff filed her complaint of the facts supporting her claim.

added). Thus, to be liable, a defendant must have actual knowledge. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729-30 (7th Cir. 2004).

Furthermore, the plain language of the statute is clear as to what the debt collector must know. Specifically, the debt collector cannot communicate with a consumer about a debt if the debt collector knows the consumer is represented "with respect to such debt." 15 U.S.C. § 1692c(a)(2). Thus, based on that plain language, a plaintiff, in order to prevail on a claim under § 1692c(a)(2), must show the defendant knew plaintiff was represented with respect to the very debt about which defendant communicated with her. 15 U.S.C. § 1692c(a)(2). It is not enough for a plaintiff to show defendant knew she was represented with respect to a different debt or a different matter. *See Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (defendant who knew plaintiff was represented by counsel with respect to one debt was not liable for communicating with plaintiff about two other debts), *overruled on other grounds, Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3rd Cir. 2020); *Dore v. Five Lakes Agency, Inc.*, Case No. 14 cv 6515, 2015 WL 4113203 at *4 (N.D. Ill. July 8, 2015) ("[Plaintiff] argues that [defendant]'s actual knowledge of her representation can be inferred because [defendant] possessed documents showing that she was represented by an attorney in her bankruptcy proceedings. But Section 1692c(a)(2) applies only where the debt collector knows the consumer is represented by an attorney with respect to the specific debt being collected.").

Here, plaintiff has put forth undisputed evidence that defendant knew plaintiff was represented with respect to a different debt. Specifically, plaintiff put forth evidence that, on January 21, 2021, her attorney forwarded to defendant a January 19, 2021 email attempting to collect a debt owned by Orion Portfolio Services II, LLC and told defendant that he represented plaintiff. Plaintiff has also put forth evidence that, after her attorney sent that email, defendant

14

contacted her, on January 24, 2021, in an attempt to collect the debt owned by Pinnacle Credit Services, LLC. The debt that defendant was attempting to collect when it sent its January 24, 2021 email, however, was different from the debt it was attempting to collect in its January 19, 2021 email. Plaintiff has put forth no evidence that defendant knew, prior to the time defendant sent the January 24, 2021 email attempting to collect the Pinnacle Credit Services, LLC debt, that plaintiff was represented by counsel with respect to the Pinnacle Credit Services, LLC debt. Rather, the evidence is undisputed that it was later on January 24, 2021 that plaintiff's counsel informed defendant that he represented plaintiff with respect to the Pinnacle Credit Services, LLC debt.

Accordingly, plaintiff has failed to put forth evidence from which a reasonable jury could conclude that defendant violated § 1692c(a)(2). Defendant's motion for summary judgment is granted as to Count II.

## IV. CONCLUSION

For all of these reasons, the Court grants defendant's motion [25] for summary judgment and denies plaintiff's motion [28] for summary judgment. Count I is dismissed without prejudice for want of jurisdiction. Defendant is granted summary judgment on Count II. Plaintiff's motion [34] for leave to amend is denied as moot. Civil case terminated.

**SO ORDERED.**  ENTERED: **June 23, 2022**

**HON. JORGE ALONSO**
**United States District Judge**